## Sutcliffe Company and Bourne & Bond v. City of Louisville, et al.

### (Decided November 25, 1924.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Municipal Corporations—Permitting Sale of Golf Equipment in Park Held Within Power of Park Commission.—Under Kentucky Statutes, section 2840, giving board of park commissioners control of parks, and section 2858, defining parks, permitting sale of golf equipment in park containing golf links three miles distant from business section of town, was within power of board.

BEN F. WASHER and HOMER W. BATSON for appellants.

WM. T. BASKETT and D. W. FAIRLEIGH for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The city of Louisville owns a large body of land lying partly within and partly without the city limits known as Cherokee Park. It is under the control of the board of park commissioners, created by section 2840, Kentucky Statutes. The powers of the board are thus defined in section 2848:

"The board, constituted as aforesaid, shall have the care, management and custody of all parks and grounds used for park purposes, all boulevards and parkways now belonging to the city, or to any existing board of park commissioners, or in the control of the city or existing board, and all such property as may hereafter be required for park purposes or public squares by the city or the board."

Park property is thus defined in the statute:

"The term park property includes all parks, squares and areas of land within the management of said board; and all buildings, structures, improvements, seats, benches, fountains, walks, drives, roads, trees, plants, herbage, flowers and other things thereon, and inclosures of the same; and all shade trees on streets or thoroughfares, resting places,

watering stations, playgrounds, or the like; and all connecting parkways and roads or drives between parks; and all avenues, roads, ways, drives, walks, with all trees, shrubbery, vines, flowers and ornaments of any description; and all birds, animals or curiosities, or objects of interest or instruction placed in or on any of such inclosures, ways, parkways, roads or places; and said terms shall be liberally construed.'' Section 2858, Kentucky Statutes.

The board has for some years maintained at Cherokee Park tennis courts, croquet grounds and a golf course on which the public may play. Last spring it employed a golf professional for the golf course and to induce him to take the position and for the convenience of golf players provided a place at the golf course in which to clean and repair clubs, and he was given the privilege to sell golf balls, golf clubs and other golf equipment. Appellants, who are merchants in the city of Louisville selling golf equipment, brought this action to enjoin the board from permitting a sale of these articles in the park.

It is shown that if sales are not made at the park those playing golf will purchase a large part of the things used in the game from the merchants in the city, including the plaintiffs. The professional has no rents to pay and avoids other expenses for which the merchants are burdened and it is urged that he may undersell the merchants. But the question presented is not one of underselling, although it is shown that he does not undersell the merchants. The case must be determined simply upon the question whether the board has the power to permit such sales on the park ground. The circuit court dismissed the petition under the evidence; the plaintiffs appeal.

The proof shows that many balls are lost in playing golf, also that clubs are sometimes broken and often need cleaning and repairing. The golf course is three and a half miles from the business part of Louisville and to go from the golf course down town to get anything needed and come back will take from forty to sixty minutes ordinarily.

At all private golf courses such concessions are common; that is, a professional is retained to look after the course and he is given the privilege of selling golf

equipment. On these facts the circuit court in its opinion refusing the injunction said:

"Is the permission to sell the golf equipment within the purview of 'park purposes?' Parks are for the recreation of the people of the city. It is generally accepted that the more people get out in the open the better for their health and happiness, and thereby the better for the public good. Many different means are used to attract people to the parks. Not only are good roads, pavillions and other conveniences constructed, as well as the beautifying of the grounds, but all kinds of games are provided. There are baseball diamonds, football grounds, tennis courts, all kinds of apparatus for children to play with, and golf courses. By all these methods people are induced to spend time in the parks. No one of them is essential, but every one of them is inviting. Many go to the parks to ride; others have no means of riding in the parks and go for picnics. Some use the roads; others the ground generally; some both. The beauty of the park is attractive to nearly all. Each of the games has its devotees. Every convenience does its part in the attraction. Whatever may be considered a convenience or attraction to the park is, in my opinion, within 'park purposes.' A golf course can be used without balls being provided at the course. The same is true as to clubs and as to repairing them at the grounds. In fact, golf can be played here without a single golf ball or club being sold or repaired in Louisville. Orders can be made from other places. It, however, is quite a convenience, almost an essential, that the equipment be purchasable in the city. It is also quite a convenience, not so near an essential, that this equipment be purchasable at the grounds, or at least nearer than three miles. It at least may be considered a proper attraction to the park. Whether it shall be so considered is within the discretion of the board of park commissioners."

The authorities on this subject are collected in an exhaustive note to Wright v. Walcott, 18 A. L. R. 1262-66, and fully sustain the conclusion of the circuit court. Thus, as there shown, it has been held that the devotion of a

reasonable portion of a public park to tennis courts, croquet grounds, baseball grounds and a golf course, with suitable appliances for these forms of public amusement and recreation, comes strictly within the proper and legitimate uses for which public parks are created. The park board may grant a privilege for a public stage route with stations and waiting rooms in a park where the right to run stages is confined to their operating for the sole purpose of carrying visitors into or out of the park or from one part of it to another and it may grant a concession to hold in a public park race meets for short periods of time for the entertainment of the public, although it cannot by lease so grant the use and control of a part of the park for a race track as to practically deprive the public of its enjoyment. In such parks it is common for the board to grant concessions where something to eat and light drinks may be sold. For some years the Cherokee Golf Club has sold balls and three hundred lockers have been maintained in which the players are allowed to keep their golf equipment. The board has undoubtedly authority to maintain the golf course and to do those things which are reasonably necessary for its proper enjoyment by the public. On all the evidence the court sees no reason for disturbing the judgment of the board on this question.

Judgment affirmed. Judge Dietzman not sitting.